UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BAHRAM NASSERIZAFAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:13-cv-02045-TAB-JMS |
| ) | |
| INDOT, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

Pending before the Court is Defendant INDOT's motion for summary judgment against Plaintiff Bahram Nasserizafar in his Title VII retaliation lawsuit. Nasserizafar asserts that summary judgment is inappropriate because material facts concerning his termination are in dispute. The Court disagrees. For the reasons below, INDOT's motion for summary judgment [Filing No. 49] is granted.

**II.    Background**

Nasserizafar began working for INDOT as a highway engineer in September 1989. He continued to work in that capacity until INDOT terminated him on January 14, 2013. [Filing No. 50-1, at ECF p. 415-16.] The basis of that termination is the crux of this case and centers upon a meeting between Nasserizafar and his manager, John Wright, that took place at Nasserizafar's request on January 11, 2013. Nasserizafar told Wright during the meeting that he was disappointed that Wright had not given him good appraisals, bonuses, achievement awards, or raises. Nasserizafar accused Wright of joining the ranks of his other discriminatory supervisors who were part of a discrimination lawsuit Nasserizafar had filed in federal court against

INDOT.[1]  [Filing No. 50-1, at ECF p. 38-40; Filing No. 50-2, at ECF p. 1-3.]  These facts are undisputed but after this point the parties' versions of events vary.

INDOT claims that Nasserizafar told Wright he "hated [Wright's] guts," and was in an "all-out war" against INDOT.  INDOT also asserts that Nasserizafar told Wright that if he lost his lawsuit it would be Wright's fault and he would "never lay eyes on [Wright] again."  According to Wright, Nasserizafar grew angry over the course of the meeting, screamed at him, and waived and pointed his finger at Wright in a manner that Wright perceived as threatening.  [Filing No. 50-2, at ECF p. 2.]  In contrast, Nasserizafar claims that neither he nor Wright was angry until Wright became "emotionally distraught, . . . got red like a beetroot," and told Nasserizafar to leave his office.  [Filing No. 50-1, at ECF p. 40.]

After this meeting, Wright sent an email to Jay Wasson, Deputy Commissioner of Engineering and Asset Management, explaining the interaction with Nasserizafar.  Wasson forwarded the email to Kimberly Pearson, Deputy Commissioner of Human Resources on January 13, 2013.  [Filing No. 50-2, at ECF p. 4.]  The following day Angela Smith and Rick Fox from INDOT's Human Resources division met with Nasserizafar to investigate the claims from Wright's email.  [Filing No. 50-3, at ECF p. 1-2.]  INDOT asserts that Nasserizafar refused to explain to HR what happened in his meeting with Wright because Wright had not filed a formal complaint.  [Filing No. 50-5, at ECF p. 3; Filing No. 50-4, at ECF p. 3.]  Nasserizafar

---

[1] Nasserizafar filed two charges of discrimination against INDOT with the EEOC, one during his employment and one following his termination.  In his charge of discrimination and first lawsuit, Nasserizafar sought damages for wages lost when he did not receive pay raises and retroactive achievement awards from INDOT.  [Filing No. 50-6, at ECF p. 3, 5, 28.]  On March 28, 2013, the Court dismissed all claims from the first lawsuit.  [Filing No. 50-8.]  The Seventh Circuit affirmed this Court's dismissal on September 30, 2013.  [Filing No. 50-9, at ECF p. 5.]

asserts that he did not feel comfortable speaking with Smith and Fox because they worked for INDOT, the Defendant in his pending lawsuit. [Filing No. 50-1, at ECF p. 46.]

Based on Wright's allegations and Nasserizafar's unwillingness to participate in the investigation, Smith and Fox recommended that INDOT terminate Nasserizafar's employment. In doing so, Smith and Fox indicated that Nasserizafar violated INDOT's "Prevention of Workplace Violence Policy." This policy prohibits any act of violence, threat of violence, or act of intimidation. [Filing No. 50-4, at ECF p. 4, 7-8.] On January 14, 2013, Wasson issued the termination letter to Nasserizafar explaining that Nasserizafar was being terminated for creating a hostile work environment and threatening Wright. [Filing No. 50-4, at ECF p. 5, 10; Filing No. 50-3, at ECF p. 2.] Nasserizafar subsequently filed this lawsuit alleging retaliation.[2]

### III. Discussion

#### A. Retaliation standard

INDOT argues that summary judgment is appropriate because Nasserizafar cannot establish a claim for retaliation under Title VII. A retaliation claim can be established by either the direct or indirect method. Hobgood v. Illinois Gaming Bd., 731 F.3d 635, 641-42 (7th Cir. 2013). Under the direct method, the plaintiff must present evidence that (1) he participated in a statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) a causal link exists between the two. Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 508 (7th Cir. 2004). To satisfy the causation prong, the Court must find that Nasserizafar's EEOC

---

[2] This is the second complaint Nasserizafar filed against INDOT with the EEOC that has proceeded to federal court. Like his first complaint, it alleges ADA, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 claims. It also includes a retaliation claim under Title VII. This Court dismissed Nasserizafar's ADA, § 1981, and § 1983 claims on June 16, 2014. Only Nasserizafar's retaliation claim remains.

complaint and federal lawsuit were "substantial or motivating factor[s]" in INDOT's decision to terminate him. *Gates v. Caterpillar Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) (quoting *Culver v. Gorman & Co.,* 416 F.3d 540, 545 (7th Cir. 2005)). This may be done through direct evidence, which "entail[s] something akin to an admission by the employer." *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011).

Alternatively, circumstantial evidence can show causation. Using this approach, the plaintiff must develop a "'convincing mosaic' of circumstantial evidence" that would lead to the same inference without INDOT's explicit admission. *Rhodes,* 359 F.3d at 504 (quoting *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994)). A convincing mosaic must include sufficient evidence from which an inference of retaliatory intent could be drawn. Sufficient evidence includes: "suspicious timing, ambiguous statements or behavior towards other employees in the protected group, evidence that similarly situated employees outside of the protected group systematically receive better treatment, and evidence that the employer offered a pretextual reason for an adverse employment action." *Hobgood,* 731 F.3d at 643-44 (internal quotations omitted).

The indirect method has three steps. At the first step, the plaintiff must offer evidence of a prima facie case of retaliation by showing that he (1) engaged in an activity protected by law; (2) met his employer's legitimate expectations; (3) suffered a materially adverse action; and (4) was treated less favorably than a similarly situated employee who did not engage in the activity protected by law. *Id.* at 641. Once the employee establishes a prima facie case, the burden shifts to the employer at the second step to articulate a legally permissible reason for the adverse employment action. *Id.* at 641-42. Once the employer articulates its reason, the analysis moves

4

to the third step, where the plaintiff tries to show that the employer's stated reason is pretext. *Gates*, 513 F.3d at 690.

    B.    *Direct method*

It is undisputed that Nasserizafar engaged in legally protected activities and suffered an adverse employment action when he filed his EEOC complaint against INDOT and was subsequently terminated. [Filing No. 52, at ECF p. 2]. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006) (noting that "termination is certainly an adverse action"). However, Nasserizafar must establish a causal connection between his protected activity and the adverse action in order to survive summary judgment. *Hobgood*, 731 F.3d at 642. INDOT asserts no such causation exists.

Nasserizafar asserts that circumstantial evidence shows causation. However, Nasserizafar's circumstantial evidence is insufficient to establish the Seventh Circuit's convincing mosaic of retaliatory intent.[3] *Hobgood,* 731 F.3d at 643-44; *Rhodes,* 359 F.3d at 504. Nasserizafar argues that the timing of his termination suggests a causal link as he filed his first EEOC complaint on March 27, 2012, and was terminated on January 14, 2013. [Filing No. 50-6, at ECF p. 5; Filing No. 50-4, at ECF p. 10.] More than nine months elapsed between the two events—a fact that INDOT asserts is not sufficient to establish suspicious timing. [Filing No. 52, at ECF p. 13.] Nasserizafar argues that only a three-month gap existed between the protected

---

[3] Nasserizafar cited to a multitude of documents in his brief that he alleges have a "direct causal link . . . to the retaliatory actions." [Filing No. 54, at ECF p. 8.] However, none of these documents contribute to a convincing mosaic of circumstantial evidence from which an inference of retaliatory intent can be drawn. For example, some of the documents, such as a binder detailing projects from 2005–2007, predate the first EEOC complaint. [*See, e.g.,* Pltf's Ex. O2 (documenting his participation on the LaPorte District virtual team).] Other documents, such as letters regarding accidental disclosure of Nasserizafar's social security number that occurred during the disposal of paperwork, are irrelevant. [*See, e.g.,* Pltf's Ex. D4.] Nasserizafar submitted paper copies of all of his exhibits. Therefore, citations are to the original documents, not to docket filings.

activity and his termination because the clock started when he filed his lawsuit, not his EEOC complaint. [Filing No. 54, at ECF p. 8.] Assuming Nasserizafar is correct, his three-month gap is still insufficient under Seventh Circuit caselaw to develop a causal link between his protected activity and this termination. See Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 919 (7th Cir. 2000) ("Because plaintiffs have shown no evidence other than the three[-]month gap . . . one could not reasonably conclude that the two events are causally related to one another.").

Nasserizafar's circumstantial evidence also includes a sentence in an email from Wasson to Pearson in HR. Wright emailed Wasson after his January 11, 2013, meeting with Nasserizafar. Wasson in turn forwarded the email to Pearson, stating "My gut is wondering if we need the fitness for duty evaluation by [the State Personnel Department] as I believe they referenced this as an option last summer." [Filing No. 50-3, at ECF p. 4.] According to Nasserizafar, this reference to a proposed evaluation in Wasson's email shows that INDOT wanted to terminate his employment before Wright reported the alleged threat, and thus, shows retaliatory intent. Nasserizafar further alleges that there was no reason other than his EEOC complaint for a fitness for duty evaluation because his appraisals were satisfactory. [Filing No. 54, at ECF p. 16.]

INDOT argues that the State Personnel Department originally suggested the fitness for duty evaluation not due to Nasserizafar's EEOC complaint but because of a phone conversation between Nasserizafar and Pearson. [Filing No. 59, at ECF p. 16-17.] Pearson recorded this phone conversation because "based on previous communications with [Nasserizafar] [she] felt [she] needed a witness to hear the conversation." [Filing No. 59-2, at ECF p. 1.] Wasson was also present for the conversation, listening to it over speakerphone. According to Wasson's second affidavit, Wasson was concerned by what he perceived to be Nasserizafar's "rambling

and irrational tone." [Filing No. 59-1, at ECF p. 2.] Wasson and Pearson subsequently met with State Personnel Department representatives about Nasserizafar's tone during the phone call. The representatives suggested conducting a fitness for duty evaluation, but no such evaluation occurred. Wasson testified that Wright's email regarding the alleged threat reminded him of the State Personnel Department's previous suggestion that Nasserizafar's fitness for duty be evaluated. [Filing No. 59-1, at ECF p. 2.]

Construing the facts in the light most favorable to Nasserizafar, Wasson's email is akin to an "ambiguous statement" made by a supervisor. Such circumstantial evidence would support an inference of retaliatory intent. Even so, Nasserizafar's claim fails to establish a genuine issue under the direct method. To establish retaliatory intent using circumstantial evidence, Nasserizafar must provide more than one piece of evidence to craft a convincing mosaic that survives a summary judgment challenge. See Sylvester v. SOS Children's Villages Illinois, Inc., 453 F.3d 900, 903 (7th Cir. 2006) ("[A] number of pieces of evidence none meaningful in itself . . . can, when taken as a whole, provide strong support if all point in the same direction."). Nasserizafar fails to do so and thus, cannot show retaliation under the direct method at the summary judgment stage.

C.     Indirect method

Step one of the indirect method requires Nasserizafar to establish a prima facie case of retaliation. As previously noted, the parties agree that Nasserizafar engaged in legally protected activities and that Nasserizafar suffered an adverse employment action when he was terminated. However, the parties disagree about whether Nasserizafar was treated less favorably than a similarly situated employee and whether Nasserizafar met INDOT's legitimate expectations.

A similarly situated employee must have substantial similarities to Nasserizafar and there must be "enough common features between the individuals to allow a meaningful comparison." *Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 405 (7th Cir. 2007), *aff'd,* 553 U.S. 442, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008). The comparators need not be identical to Nasserizafar, but he must at least show that they "'dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without . . . mitigating circumstances'" so that a reasonable juror would be able to infer that an impermissible animus motivated the employer's decision. *Coleman v. Donahoe,* 667 F.3d 835, 850 (7th Cir. 2012); *Snipes v. Illinois Dept. of Corr.,* 291 F.3d 460, 463 (7th Cir. 2002) (quoting *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir. 2000)).

In opposing summary judgment, Nasserizafar puts forth three employees as comparators that he claims were treated more favorably than he was. Nasserizafar asserts that these employees told him that they believed that their supervisor, David Holtz, had threatened them with termination if they did not keep up with the demands of their positions. These employees then allegedly reported their grievances to Wright, their direct manager, who resolved the issue within a few days. [Filing No. 54, at ECF p. 14-15.] Nasserizafar asserts that these employees received "award bonuses as their settlement for the mistreatment they had received," whereas he was terminated. [Filing No. 54, at ECF p. 14-15.]

However, Nasserizafar's comparators are insufficient for two reasons. First, Nasserizafar relies on inadmissible evidence. Nasserizafar concedes in his brief that this information was not based on his personal knowledge, and Nasserizafar provides no affidavits from these individuals explaining the circumstances of their grievances first-hand. [Filing No. 54, at ECF p. 15.] Instead, his retelling is "the best I remember," which is a far cry from the standard for admissible

8

evidence. [Filing No. 54, at ECF p. 14.] Nasserizafar also relies on hearsay in describing the conduct of the employees' supervisor. This too is inadmissible. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994). Second, Nasserizafar's comparators are distinguishable. While comparators need not be identical, they must be similar enough to permit a reasonable juror to infer, in light of the circumstances, that an impermissible animus motivated the employer's decision. *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). Unlike Nasserizafar, his comparators' supervisor informed them that they would be fired if they did not meet the expectations of their positions. Moreover, his comparators felt threatened by their supervisor, which is a significant departure from Nasserizafar's situation where his supervisor felt threatened by his conduct. These comparators lack the degree of similarity necessary to establish that Nasserizafar was treated less favorably because he participated in statutorily protected activities. Consequently, Nasserizafar's retaliation claim under the indirect method fails at the summary judgment phase, thereby ending the Court's analysis on summary judgment.

Even assuming the analysis continued, Nasserizafar still fails to show he met INDOT's legitimate expectations at the time he was terminated. Nasserizafar's self described "affidavit" of the January 11, 2013, meeting fails to dispute Wright's sincere feelings of being threatened "and as if [he] could be a target of Mr. Nasserizafar in the future." [Filing No. 50-2, at ECF p. 2.] Nasserizafar's document is not sworn, nor does it contain any statement or certification made under penalties of perjury that its contents are true and correct. [Pltf's Ex. 57.] This does not substantially comply with the requirements for either a sworn statement or an unsworn statement made under penalties of perjury pursuant to 28 U.S.C. § 1746. Accordingly, it is inadmissible at summary judgment. *Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1985) (noting that the Court

may consider sworn affidavits or unsworn documents that comply with the requirements of 28 U.S.C. § 1746 at the summary judgment stage).[4]

INDOT argues that Nasserizafar did not meet legitimate expectations because he threatened his supervisor and created a hostile work environment. Such conduct violated INDOT's "Prevention of Workplace Violence Policy," which prohibits any act or threat of violence or act of intimidation, including expressions of hatred. [Filing No. 50-4, at ECF p. 7-8.] Under this policy, management is to assess and investigate any incident to determine the appropriate action to take. [Filing No. 50-4, at ECF p. 8.] INDOT's HR representatives met with Nasserizafar to discuss Wright's allegations, but Nasserizafar refused to cooperate. After that meeting, INDOT's HR representatives attempted to provide Nasserizafar additional opportunities to rebut Wright's allegations, but Nasserizafar refused to discuss the January 11, 2013, meeting. [Filing No. 50-4, at ECF p. 3.] Subsequently, INDOT's HR representatives found Nasserizafar created a hostile work environment and recommended termination. INDOT followed the procedure set forth in its policy handbook, and provided a legitimate, non-discriminate reason for Nasserizafar's termination. Thus, Nasserizafar cannot raise a genuine issue of material fact that INDOT's reasons were pretextual, and his retaliation claim cannot survive INDOT's summary judgment challenge.

---

[4] Nasserizafar's deposition appears to contain a differing view of his interaction with Wright, but the Court will not consider it because Nasserizafar did not cite to his deposition in support of his position, and "judges are not like pigs, hunting for truffles buried in briefs." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) (citing U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

IV. Conclusion

For the foregoing reasons, Defendant INDOT's motion for summary judgment [Filing No. 49] is granted and judgment will be entered accordingly.

Date:  8/4/2015

_____
Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution:

Bahram Nasserizafar
565 Meadow Court
Zionsville, IN 46077

Dennis E. Mullen
INDIANA ATTORNEY GENERAL
dennis.mullen@atg.in.gov

Lakesha D. Triggs
INDIANA ATTORNEY GENERAL
lakesha.triggs@atg.in.gov

11